IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Case No: 1:21-cr-427 (CJN) |
| **v.** | : | |
| | : | |
| **KURT PETERSON,** | : | 18 U.S.C. § 1752(a)(4) & (b)(1)(A) |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Kurt Peterson, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November

1

3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

*Defendant Kurt Peterson's Participation in the January 6, 2021, Capitol Riot*

8.      The defendant, Kurt Peterson, lives in Hodgenville, Kentucky. On January 5, 2021, the defendant drove from his home to the Washington, D.C. area with three other people, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ The defendant and his traveling companions were aware that on January 6, 2021, Congress was convening at the U.S. Capitol to certify the results of the 2020 presidential election.

9.      On the morning of January 6, 2021, the defendant and the three other people attended a speech given by former President Trump near the White House. After that, the four people walked toward the U.S. Capitol. During the walk, the defendant was separated from the three other people.

10. The defendant entered the Capitol grounds, and at one point, stood near a line of law enforcement officers who were standing outside the U.S. Capitol Building. While in the crowd, the defendant was sprayed by law enforcement officers with chemical spray used for riot control purposes.

11. The defendant then approached the U.S. Capitol Building carrying a pointed wooden stick. From the exterior of the building, the defendant used the pointed wooden stick to shatter the left pane of an exterior window of the U.S. Capitol Building. The force of the pointed wooden stick first shattered the glass of the window, and the defendant further broke the glass with his fist. The right pane had already been broken. While smashing the window, the defendant shouted, "This is our house! Let us in! Our house!"

12. The defendant then entered the U.S. Capitol Building at approximately 2:42 PM. He walked through the building to the area known as the Speaker's Lobby. The defendant was present while others in the crowd shouted and banged on the door of the Speaker's Lobby. The defendant was in view of members of the crowd who broke the door of the Speaker's Lobby. He was present when an individual attempted to climb through that door and was shot by law enforcement.

13. The defendant remained in that general area until reinforcements from the Metropolitan Police Department arrived and forced members of the crowd, including the defendant, out of the U.S. Capitol Building.

14. The cost to repair the window broken by the defendant is estimated to be over $2700.

15. After leaving the Capitol Building, the defendant met back up with his traveling companions. ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███

### *Elements of the Offense*

16.     The defendant knowingly and voluntarily admits to all the elements of Engaging in Physical Violence in a Restricted Building or Ground Using or Carrying a Dangerous or Deadly Weapon pursuant to 18 U.S.C. § 1752(a)(4) & (b)(1)(A). Specifically, the defendant admits that he knowingly engaged in an act of physical violence against property in any restricted building or grounds, and that he did so carrying and using a dangerous or deadly weapon, that is, a pointed wooden stick.

Respectfully submitted,

MATTHEW M. GRAVES
Acting United States Attorney
D.C. Bar No. 481052

By:     */s/ Jason M. Crawford*
Jason M. Crawford
Trial Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, Kurt Peterson, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 09/12/22

Kurt Peterson
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/14/22

Aaron M. Dyke
Attorney for Defendant